UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EUGENE STINSON,<br>    *Petitioner,*<br>    *v.*<br>UNITED STATES OF AMERICA,<br>    *Respondent.* | Civil No. 3:13-cv-427 (JBA)<br><br>December 8, 2014 |

**RULING ON PETITIONER'S MOTIONS UNDER § 2255**

The Court has before it four pro se motions filed by Petitioner Eugene Stinson ("Eugene"):[1] an Amended Petition [Doc. # 9] to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody; a Motion [Doc. # 18] for Leave of Discovery and for Expansion of the Record, Abeyance of Proceedings, and Evidentiary Hearing; a Motion [Doc. # 8] for Leave to Conduct Discovery; and a Motion [Doc. # 7] for Expansion of the Record. Because all of these motions are interrelated, the Court will consider them together. For the following reasons, Eugene's Amended Motion to Vacate and his three motions regarding discovery, expansion of the record, and an evidentiary hearing are denied.

**I.   Background**

On March 9, 2010, Eugene was convicted of conspiracy to steal firearms from a federally licensed firearm dealer, American Precision Manufacturing ("APM") and theft

---

[1] For clarity, the Court will refer to Petitioner as Eugene and his father as Michael.

of firearms from a federally licensed firearm dealer.  On August 16, 2010, this Court sentenced Eugene to 120 months in prison.[2]

During the course of the trial, the jury heard testimony from Eugene's co-defendant (and father) Michael Stinson and APM employee and government cooperator Ameed Stevenson, among others.  Michael testified that "on the night of the theft, Eugene told [him] there were guns in the APM warehouse."  (Summ. Order., Ex. 6 to Gov't Opp'n [Doc. # 13] at 4.)[3]  Eugene's counsel objected, on the grounds that a co-conspirator cannot introduce a statement of a non-testifying co-conspirator.  (Counsel's App. Br., Ex. 4 to Gov't Opp'n at 9.)  After an extended argument by counsel at side bar, "the court asked Michael Stinson's counsel to defer additional questions as to vicarious entrapment, and to proceed to questions related to his direct entrapment claim."  (*Id.* at 10.)  Michael's counsel "subsequently informed the court that she would not pursue the introduction of the statement."  (*Id.* at 11.)

On appeal, Eugene argued that the Court erred in failing to communicate to the jury its ruling on Eugene's objection.  (*Id.* at 19.)  The Second Circuit found "no error in the district court's delay in ruling on the objection in order to make a conscientious assessment of whether the statements were relevant and admissible, in the course of Michael's defense, as a co-conspirator's statement in furtherance of a conspiracy."

---

[2] Eugene's sentence was based on the following facts: the stolen firearms were semi-automatic, there were 29 stolen guns, Eugene had a prior felony conviction for a crime of violence, and Eugene was an organizer of the firearms thefts.

[3] The numbers referenced in the citations refer to the numbers at the bottom of each page.  These numbers do not always correspond with the page numbers that appear at the top of each ECF document.

(Summ. Order, Ex. 6 to Gov't Opp'n at 4.)  The appellate court additionally noted that the district court offered to strike the evidence or give a limiting instruction and "Eugene expressly declined the court's offer." (*Id.* at 5.)  Accordingly, Eugene had waived his objection. (*Id.*)

In addition to these arguments raised by Eugene's counsel on appeal, Eugene himself asserted, through his own pro se appellate brief, "a number of claims, including allegations that the government and its agents violated his due process rights; the government misrepresented evidence during its closing argument; the government committed Brady and Jencks Act violations; the trial court abused its discretion; Stevenson perjured himself at trial; and that Eugene was entrapped as a matter of law." (*Id.* at 5.)  The court found no merit to any of the claims.  (*Id.* at 6–7.)

## II.   Discussion

Section 2255 allows prisoners in federal custody to move for their sentences to be vacated, set aside, or corrected.  28 U.S.C. § 2255.  Section 2255(a) states as the grounds for which relief can be provided: "[T]he sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Eugene alleges in his initial and amended § 2255 petitions that: (1) his counsel at trial was ineffective, in violation of his Sixth Amendment right to counsel (2) his appellate counsel was ineffective, in violation of his Sixth Amendment rights (3) the district court erred in finding facts that enhanced Eugene's sentence, in violation of his Fifth

Amendment right to Due Process; and (4) the district court erred in calculating his sentence, constituting a fundamental defect and causing a complete miscarriage of justice.

### A. Ineffective Trial Counsel

A petitioner seeking to bring an ineffective counsel claim must satisfy two prongs: (1) "the defendant must show that counsel's representation fell below an objective standard of reasonableness;" and (2) the defendant must demonstrate that "any deficiencies in counsel's performance [were] prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 688–91 (1984). A court assessing such a claim "must be highly deferential" to counsel and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Eugene makes a number of allegations with respect to his trial counsel's performance. He begins by asserting that his counsel "failed to properly and reasonably investigate the case or challenge . . . trial testimony, government exhibits 1-G, 1-F, 1-E, 4-B, and D-M-5."[4] (Original § 2255 Pet. [Doc. # 1] at 3.) He goes on to argue that his attorney should have moved for a mistrial "based on this prejudicial evidence which was allowed to be viewed by the Jury" to prove that Eugene was predisposed to commit the charged crime and therefore had not been entrapped. (*Id.*) In addition, "Counsel should have moved to suppress or strike these evidences since [the] evidence was hearsay in nature" due to the fact that "[t]he confidential informant that procured this evidence did not testify." (*Id.*)

---

[4] Eugene's reference to D-M-5 does not refer to any exhibit reflected in the record.

The exhibits Eugene references are: a black bag (Ex. 1-E), two assault rifles that had been inside the bag (Exs. 1-G, 1-F), and a recording of a controlled meeting between Eugene and Mr. Stevenson on October 19, 2009 (Ex. 4-B).  Mr. Stevenson testified that he stole three assault rifles from APM in August 2009 and gave two of them to Eugene. (Trial Tr. Vol. I, Ex. 1 to Govt.'s Resp. at GA417–18.)   Sometime shortly thereafter, Eugene gave the guns back to Mr. Stevenson in a black bag with a greyhound tag that Mr. Stevenson identified as Exhibit 1-E because the guns needed to be repaired.  (*Id.* at GA423–25.)  According to Mr. Stevenson (but disputed by Michael), Mr. Stevenson then gave the bag with the guns to Michael, at Eugene's direction.  (*Id.* at GA426–28.) Detective Dowling and Agent Riordan testified that subsequently, on September 21, 2009, the Government came into possession of the same bag and guns (which they identified as Exhibits 1-F and 1-G) through a controlled buy by an unnamed confidential informant. (*Id.* at GA169, 174, 175; Trial Tr. Vol. II, *id.* at GA627.)[5]  The October 19 recording was identified by Detective Dowling as a recording of the conversation between Mr. Stevenson and Eugene that took place in Eugene's apartment.  (Trial Tr. Vol. I, *id.* at GA213–16.)

Eugene's vague and conclusory accusation lacks any demonstrated merit.  As to Eugene's allegation that his counsel should have moved for a mistrial because prejudicial evidence was admitted, the Court is not persuaded.  Eugene's attorney actually did object to the admission of the guns, bag, and related testimony, arguing that they were not

---

[5] Michael identifies Ex. 1-E as a bag that he brought to APM on the night of the theft.  The transcript reflects however that Michael was being shown Ex. 1-D not 1-E. (Trial Tr. Vol. IV, Ex. 1 to Govt. Resp. at GA787.)

relevant to predisposition, but the Court admitted the evidence as relevant background to the theft. (Trial Tr. Vol. II, *id.* at GA431, 439.)  A mistrial is appropriate only when a court finds there is "manifest necessity" for such an order. *Arizona v. Washington*, 434 U.S. 497, 506 (1978).  The standard is high, and courts will only order a mistrial if it is necessary to ensure the defendant a fair trial.  *Id.* at 507–513.  A mistrial was not appropriate here because, as the Court determined during trial, the evidence to which Eugene objected was not unduly prejudicial and was relevant to the case.

Nor is there merit to Eugene's hearsay claim.  Hearsay is an out-of-court statement to prove the truth of the matter asserted.  Although conduct and documents can be testimonial, items like guns are not generally testimonial, and therefore do not constitute hearsay.  The fact that the confidential informant who purchased the guns did not testify does not make the guns hearsay.  While the CI's failure to testify might raise foundation or authentication challenges, Detective Dowling's testimony provided adequate foundation and authentication for the guns and bag.

The basis of Eugene's challenge to Exhibit 4-B is not clear.  The evidence, a recording of a controlled meeting between Mr. Stevenson and Eugene, in which the two discussed stealing weapons from APM is clearly relevant to the conspiracy charge.  The Court finds no error in counsel's failure to object to this evidence.  Eugene additionally argues that his counsel was ineffective because he "failed to put on evidence of Stinson's co-defendant 'Michael Stinson' direct conversations with the government witness 'Ameed Stevenson' on October 19, 2009 . . . which would have negated any leadership role for the defendant Eugene Stinson in the crime charged." (Original § 2255 Pet. at 4.)  The record

6

does not reflect the conversation to which Eugene refers and absent information about its content, the claim is not shown to have merit.

Next, Eugene contends that his counsel erred in failing to request a mistrial due to "the District[] Court[']s delay in ruling on the objection to the second defendant (Michael Stinson's testimony)." (*Id.*)  Eugene is referring to an objection his counsel raised to testimony from Michael that Eugene told him there were guns in the APM warehouse on the night of the theft (detailed in the Background section above).  The Government asserts that Eugene is procedurally barred from making this argument because he raised it on appeal, and the Second Circuit found it lacked merit.  (Gov't Opp'n at 23.)

"It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)).  However, "[a] claim is not barred from being brought in a § 2255 motion where it rests upon a different legal 'ground' for relief than the one previously raised." *Id.* at 123.  Notwithstanding the Government's contentions, Eugene's claim is not procedurally barred because it rests upon a different legal ground for relief than did his previous, related claim.

In rejecting Eugene's argument on appeal, the Second Circuit held that Eugene's counsel had waived his objection when he failed to request a mistrial and "expressly declined the court's offer to strike the evidence or give a limiting instruction." (Summ. Order, Ex. 6 to Gov't Opp'n at 5.)  On appeal, Eugene argued that the Court had erred in delaying its ruling on the objection; he now contends that his attorney erred in waiving the objection.

While the Court finds that Eugene's claim is not procedurally barred, it also finds that the claim lacks merit. Under the *Strickland* test, the Court must apply the presumption that "under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). Eugene has failed to present sufficient proof to overcome this presumption. His conclusory statement that counsel's decision was not tactical runs up against counsel's own statement to the district court at the time he declined the Court's offer of remedial action in which he explained that he did not want to draw greater attention to the challenged testimony. (Summ. Order, Ex. 6 to Gov't Opp'n at 4.) Even if hindsight might invite second-guessing of counsel's decision to decline the Court's remedial offer, the record provides no basis for the claim that counsel's actions "were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Finally, Eugene argues his attorney erred in "fail[ing] to ask the Court to strike government's witness repeated statements that he plead guilty in the Court case which is untrue." (Original § 2255 Pet. at 5.) Eugene refers here to Mr. Stevenson's testimony that he pled guilty to aiding and abetting the theft of firearms on October 19, 2009. (Trial Tr. Vol. II, Ex. 1 to Gov't Opp'n at GA395.) It is true that Mr. Stevenson's characterization of his guilty plea as being in "this case" may have been confusing to the jury, but Eugene's attorney promptly objected to this characterization and the question was rephrased to make it clear that the plea was in a different case. (*Id.* at GA395–96.) In addition, on cross-examination of Mr. Stevenson, Eugene's attorney asked a series of questions designed to eliminate any confusion that may have arisen during Mr. Stevenson's direct

examination with regard to the guilty plea. (*Id.* at GA524–25.) The Court therefore finds no merit to this claim.

### B. Ineffective Appellate Counsel

In addition to alleging that his trial counsel was ineffective, Eugene contends that his appellate counsel was ineffective. Eugene asserts that his attorney failed to "properly investigate" the law regarding plain error and entrapment. (Original § 2255 Pet. at 6.) However, Eugene provides no support for these conclusory statements. Furthermore the allegations are belied by Eugene's attorney's brief, in which he quotes the law regarding entrapment. (Counsel's App. Br., Ex. 4 to Gov't Opp'n at 14 n.4.)

### C. Sentencing

Eugene's last two claims relate to the Court's calculation of his sentence. Eugene claims that his sentence violated the Fifth Amendment. (Am. § 2255 Pet. at 1.) First, he argues, the Court "improperly calculated the guideline sentence." (*Id.*) The basis of this claim appears to be that the factors the Court used to enhance the sentence were impermissibly not charged in the indictment. (*Id.* at 2.) However, as the Government notes, this argument reflects a misunderstanding of the law. (Gov't Opp'n at 22.)

The Supreme Court has held that facts which increase mandatory minimum or maximum sentences must be found by a jury, not a judge. *See Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The Supreme Court has been clear however, that judges may "exercise discretion . . . in imposing a judgment within the range prescribed by statute." *Apprendi*, 530 U.S. at 481 (emphasis original). The statutory maximum sentence under 18 U.S.C. § 924 for a knowing violation of 18 U.S.C. § 922(u) is ten years' imprisonment. Eugene received a

9

sentence of ten years, the maximum statutory sentence. Because the Court did not find facts that increased the sentence above the statutory maximum, neither *Apprendi* nor *Alleyne* are implicated here.

Next, Eugene alleges that the Court miscalculated the number of firearms he possessed for purposes of the theft charge. He argues that although he was alleged to have planned to take 29 firearms, at the time the police intervened, only 16 firearms had been carried away from the premises. Because the theft offense requires the stolen firearms be "unlawfully take[n] or carr[ied] away from the person or the premises," Eugene asserts that the Court erred in finding there were 29 and not 16 guns stolen. 18 U.S.C. § 922(u).

This is not the first time Eugene has made this argument. In his pro se direct appeal, Eugene argued that "[t]he Court . . . erred when it improperly attributed 29 firearms to [Eugene]" when only 16 of the guns "made it out of APM facility." (Pro Se App. Br., Ex. 5 to Gov't Opp'n at 9.) The Second Circuit explicitly addressed this claim, concluding that the "district court did not abuse its discretion" when it determined that 29 firearms were stolen. (Summ. J., Ex. 6 to Gov't Opp'n at 7.) Because the claim Eugene brings now rests on the same legal ground for relief as his previous claim, he is procedurally barred from relitigating it, nor has it been to shown to have merit.

D. **Discovery, Evidentiary Hearing, Expansion of Record**

Eugene submitted three motions, under Rules 6, 7, and 8 of the Rules Governing § 2255 Proceedings, requesting discovery, an evidentiary hearing, and expansion of the record. The Rules permit a judge to expand the record if the judge is unable to dismiss the habeas petition on the pleadings. *See Blackledge v. Allison*, 431 U.S. 63, 82 (1977) ("[T]he district judge . . . may employ a variety of measures in an effort to avoid the need

for an evidentiary hearing. . . . Under Rule 7, the judge can direct expansion of the record to . . . enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing."). However, record expansion is not necessary if the judge can dismiss the petition on the pleadings alone. *See id.*; *see also Pham v. United States*, 317 F.3d 178, 186 (2d Cir. 2003) (Sotomayor, J. concurring) ("[O]nce the court has determined that the nature of the prisoner's allegations precludes summary adjudication, it should ensure that a full record is developed on disputed issues and that a live testimonial hearing be included as part of that process when warranted.")

Under Rule 6(a) of the Rules Governing § 2255 Proceedings, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure." "A petitioner may show good cause by presenting 'specific allegations' that give the court 'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Renis v. Thomas*, 2003 WL 22358799, at *2 (S.D.N.Y. 2003) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)). Petitioner here has not made such a showing. None of the discovery Eugene requests appears to be related to his § 2255 claims, and he fails to present "specific allegations" that would give the Court reason to believe expansion of the record would demonstrate that he is entitled to relief. Eugene's first motion for discovery [Doc. #8] lacks any kind of specificity as to the evidence he seeks to find through discovery. His second motion for discovery [Doc. # 18] does list specific documents[6] but

---

[6] Eugene seeks discovery of: "the warrant that was issued and used to search and seize the phone records of [his] home telephone"; the Ansonia Police Department's

11

these documents appear to relate to claims Eugene made on appeal which have already been rejected by the Second Circuit and not to the claims he made in his habeas petition. Eugene is therefore not entitled to the discovery

Nor does Eugene fare better with his requests for an evidentiary hearing and expansion of the record. Rule 7(a) permits a judge to "direct the parties to expand the record by submitting additional materials relating to the motion," but only "[i]f the petition is not dismissed." Fed. R. Gov. § 2255 Proceedings 7(a). Rule 8(a) mandates that a judge "review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7" in determining "whether an evidentiary hearing is warranted," but again limits the rule to situations in which the judge does not dismiss the petition. No evidentiary hearing or record expansion is necessary "where the allegations [of deprivation of constitutional rights] are insufficient in law, undisputed, immaterial, vague, palpably false or patently frivolous." *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970). As stated above, Eugene has not put forth sufficient allegations to warrant a hearing or record expansion.

---

records regarding theft at American Precision prior to August 2009; American Precisions' records regarding the firing of employees Dave and Leon Clepner; "all serial numbers" of the "alleged stolen firearms recovered outside American Precision the night of the offense"; "all AFT reports and footnotes" relating to the stolen firearms at American Precision, Ameed Stevenson, and/or any other APM employee working with AFT; records of Mr. Stevenson's arrest, leading to his cooperation with the DEA; "all statements and investigative reports of all C.I.'s and non C.I.'s that attempted to purchase an illegal firearm from petitioner"; and information regarding Mr. Stevenson's "mental state of mind (from a clinical standpoint)." (Mot. for Discovery [Doc. # 18.)

### III. Conclusion

For the foregoing reasons, Eugene Stinson's Amended Petition [Doc. # 9] to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody is DENIED, his Motion [Doc. # 7] for Expansion of the Record is DENIED, his Motion [Doc. # 8] for leave to Conduct Discovery is DENIED, and his Motion [Doc. # 18] for Leave of Discovery and For Expansion of the Record, Abeyance of Proceedings and Evidentiary Hearing is DENIED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 8th day of December, 2014.